# EXHIBIT A

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY

COMPLEX BUSINESS DIVISION

CASE NO:

| | |
|---|---|
| L3 CAPITAL HOTEL FUND, LLC, a Delaware limited liability company; and L3 CAPITAL SPECIAL OPPORTUNITY FUND, LLC, a Delaware limited liability company, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BEAR CREEK HOLDINGS, LLC, a South Carolina limited liability company; BB-BCH, LLC, a South Carolina limited Liability company; CARRINGTON MILL HOLDINGS, LLC, a South Carolina limited liability company; CRESCENT BEACH HOLDINGS, LLC, a South Carolina limited liability company; ORMOND BEACH HOLDINGS, LLC, a  South Carolina limited liability company; HYATT STREET HOLDING, LLC, a South Carolina limited liability company; BLACKSTREAM DEVELOPMENT, LLC a South Carolina limited liability company; and CONTENDER DEVELOPMENT, INC, a South Carolina corporation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT[1]

Plaintiffs L3 CAPITAL HOTEL FUND, LLC, a Delaware limited liability company and L3 CAPITAL SPECIAL OPPORTUNITY FUND LLC, a Delaware limited liability company, hereby sue Defendants BEAR CREEK HOLDINGS, LLC, a South Carolina limited liability company; CARRINGTON MILL HOLDINGS, LLC, a South Carolina limited liability company; BB-BCH, LLC, a South Carolina limited liability company; CRESCENT BEACH HOLDINGS, LLC, a South Carolina limited liability company ("Myrtle Beach"); ORMOND BEACH HOLDINGS, LLC, a South Carolina limited liability company; HYATT STREET HOLDING, LLC, a South Carolina limited liability company; BLACKSTREAM DEVELOPMENT, LLC, a South Carolina limited liability company; and CONTENDER DEVELOPMENT, INC., a South Carolina corporation; and allege as follows:

### PRELIMINARY STATEMENT

1.      Defendants absconded with millions of dollars of investor funds.  Defendants received millions of dollars from Plaintiffs, all of which was earmarked for investment into specific real estate projects, but they have refused to account to Plaintiffs or even respond to basic requests for information.  Worse, Defendants are entangled with David Feingold ("Feingold") and his web of entities, including BroadStreet Inc. and BroadStreet Global Management, each of whom are facing a securities fraud enforcement action brought by the Securities and Exchange Commission. *See Securities and Exchange Commission v. Feingold et al.*, Case No. 1:25-cv-20436-DPG, United States District Court for the Southern District of Florida (the "SEC Enforcement Action").  According to the SEC, Feingold, BroadStreet and their cohorts defrauded investors to the tune of $1 Billion.  Many, if not all, of the same projects that Plaintiffs invested in directly through

---

[1] Plaintiffs will provide the Exhibits under separate cover via Notice of Filing.

Defendants have now surfaced in the SEC Enforcement Action as Broadstreet investments.  Upon information and belief, Defendants diverted Plaintiffs' investments to Broadstreet and/or other entities that Feingold controls.  Notwithstanding their entanglement in this fraudulent scheme, Defendants have separate, distinct and independent liability to Plaintiffs as set forth in this Complaint.

2.     The L3 Capital Hotel Fund, LLC and the L3 Capital Special Opportunity Fund, LLC (collectively, the "Funds") were offered to investors pursuant to written Private Placement Memoranda (the "PPMs").  The Funds raised money in accordance with the respective PPMs for each Fund, largely through their principal, Richard Cardinale ("Cardinale"), who had long-standing relationships with most of the individual investors. The capital raised was utilized for the development of hotels, or, in the case of the Special Opportunity Fund, as real estate outparcels adjacent to valuable real estate developments.   The Funds' monies were used to invest in opportunities in exchange for an equity interest in certain special purpose vehicles that owned or controlled the projects.

3.     David Feingold and his associate, Michael Dazzo ("Dazzo"), who is also now associated with BroadStreet, recommended, structured, and oversaw the deployment of funds raised from Plaintiffs' investors and managed the day-to-day business relationships with entities and assets where monies were deployed, including Blackstream Development, LLC ("Blackstream").

4.     Unbeknownst to the Funds and Cardinale, no later than mid-2021, Feingold and Dazzo began embarking on a scheme to hijack and convert the Funds' investments to a private equity fund that Feingold initially styled as Feingold LLC, and which would eventually operate under the name BroadStreet through multiple affiliated entities, including BroadStreet Inc.,

BroadStreet Global Fund, LLC, BroadStreet Management, and BroadStreet Holdings (collectively, "BroadStreet").

5.      Throughout 2021 and particularly in late 2021, L3 Capital Management, LLC ("L3 Management"), the Manager of the Funds, pressed for certain specific details about the status of the hotels and real estate and when the investments would begin to produce cash flow for investors. Instead of providing answers, Feingold and Dazzo, became agitated, sent threatening communications and ultimately severed his relationship with Plaintiffs.

6.      Thereafter, Blackstream and its affiliates set out to abscond with the significant funds they received and, in the process, destroy the Funds and the Funds' relationships with both its investors, and the businesses in which it had invested, by blocking the flow of information and payments to the Funds.  In other words, Defendants have and continue to try to strangle all sources of income, revenue, or return on and of investments to the Funds in the hope that the Funds and their Manager will give up.

## Jurisdiction, Venue and Parties

7.      Jurisdiction is proper in this Court, as the amount in controversy exceeds $750,000, exclusive of attorneys' fees, interest, and costs, the threshold for this Court's Complex Business Litigation Division.  The subject matter in controversy and the amount in dispute meet the requirements of the Court's Administrative Order No. 17-11 §§ 3(A) and conform to the Complex Business Litigation Rules.

8.      Plaintiff L3 Capital Hotel Fund, LLC ("Hotel Fund") is a limited liability company organized and operating under the laws of Delaware.  L3 Capital Management, LLC, a limited liability company organized and operating under the laws of Delaware, is the sole Manager of Plaintiff Hotel Fund.  The Hotel Fund's members include two residents of the State of South

Carolina, and ten residents of the State of Florida. As detailed below, the Hotel Fund includes four separate investment series: (a) Asheville Hotel Project; (b) Raleigh Hotel Project; (c) North Myrtle Beach Hotel Project; and (d) Ormond Beach Hotel Project.[2] The Hotel Fund Certificate of Formation, LLC Agreement, and Private Placement Memorandum ("PPM") are attached as Composite Exhibit 1.

9.      Plaintiff L3 Capital Special Opportunity Fund, LLC ("Special Opportunity Fund") is a limited liability company organized and operating under the laws of Delaware.  L3 Capital Management, LLC, a limited liability company organized and operating under the laws of New York, is the sole Manager of Plaintiff Special Opportunity Fund.  The Special Opportunity Fund's members include seven residents of the State of Florida. The Special Opportunity Fund PPM, Operating Agreement, and Subscription Agreement are attached as Composite Exhibit 2.

10.     Defendant Bear Creek Holdings, LLC ("Bear Creek Holdings") is a limited liability company organized and operating under the laws of South Carolina.  Bear Creek Holdings owns real property situated in Asheville, North Carolina. Bear Creek Holdings is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida. Bear Creek Holdings has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo both of whom were, and remain, at all relevant times, residents of Florida.

11.     Defendant Carrington Mill Holdings, LLC ("Carrington Mill Holdings") is a limited liability company organized and operating under the laws of South Carolina.  Carrington Mill Holdings owns real property situated in Raleigh, North Carolina.  Carrington Mill Holdings is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida.

---

[2] Series A (Asheville Hotel Project) and Series B (Raleigh Hotel Project) were begun by separate entities, but as detailed below, those entities were subsumed by the Hotel Fund upon its formation.

Carrington Mill Holdings has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo both of whom were, and remain, at all relevant times, residents of Florida.

12.     Defendant BB-BCH ("BB-BCH") is a limited liability company organized and operating under the laws of South Carolina.  BB-BCH is the 30% member of and a Manager of Bear Creek Holdings, and BB-BCH is the 20% member of and a Manager of Carrington Mill Holdings, Crescent Beach Holdings, LLC, Ormond Beach Holdings, LLC, and Hyatt Street Holdings, LLC.  BB-BCH has substantial and not isolated contacts with the State of Florida due to its ownership and/or operation of Bear Creek Holdings, Carrington Mill Holdings, Crescent Beach Holdings, LLC, and Ormond Beach Holdings, LLC, a Florida-based hotel operation, and due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo, both of whom were, and remain, at all relevant times, residents of Florida.

13.     Defendant Crescent Beach Holdings, LLC ("Myrtle Beach") is a limited liability company organized and operating under the laws of South Carolina.  The principal activity of Crescent Beach Holdings is the proposed development of real property as a Marriott-branded hotel located in North Myrtle Beach, South Carolina.  Crescent Beach Holdings is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida.  Crescent Beach Holdings has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo, both of whom were, and remain, at all relevant times, residents of Florida.

14.     Defendant Ormond Beach Holdings, LLC ("Ormond Beach Holdings") is a limited liability company organized and operating under the laws of South Carolina.  The principal activity of Ormond Beach Holdings is its ownership and development of real property as a Marriott-

branded hotel located in Ormond Beach, Volusia County, Florida.  Ormond Beach Holdings is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida.  Ormond Beach Holdings has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo both of whom were, and remain, at all relevant times, residents of Florida.

15.     Defendant Hyatt Street Holdings, LLC ("Hyatt Street Holdings") is a limited liability company organized and operating under the laws of South Carolina.  Hyatt Street Holdings is the owner of real property located in Gaffney, Cherokee County, South Carolina, using funds transmitted under the control by a Florida resident, Michael Dazzo.  Hyatt Street Holdings is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida.  Hyatt Street Holdings has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo both of whom were, and remain, at all relevant times, residents of Florida.

16.     Defendant Blackstream Development, LLC ("Blackstream") is a limited liability company organized and operating under the laws of South Carolina having its principal place of business in Greenville, South Carolina.  The initial managers of Blackstream (Ford Elliott and Carlos Salgado) are residents and citizens of South Carolina.  The members of Blackstream are: Joshua L. Howard, a citizen and resident of South Carolina; Ford Elliott, a citizen and resident of South Carolina; and Carlos Salgado, a citizen and resident of South Carolina.  Blackstream has substantial and not isolated contacts with the State of Florida due to its communications, through Ford Elliott and Joshua Howard, with David Feingold and Michael Dazzo, both of whom were, and remain, at all relevant times, residents of Florida.  Blackstream is the recipient of funds that originated under the control of Michael Dazzo, a resident of Florida. Blackstream is a real estate

development business, which engages in, among other things, real estate infrastructure development, hospitality, restaurant, and townhome development.

17.     Defendant Contender Development, Inc. ("Contender") is a South Carolina corporation organized and operating under the laws of South Carolina and having its principal place of business in Greenville, South Carolina. Upon information and belief, Contender is merely an entity of Blackstream owned and operated by many, if not all, of the same individuals. Contender's website lists Ford Elliott and Joshua Howard as the management team.  Contender has continuous and not isolated contacts with the State of Florida through its involvement as the developer of the Marriott-branded hotel located in Ormond Beach, Volusia County, Florida held by Ormond Beach Holdings.

18.     This Court has personal jurisdiction over Defendants by reason of the fact that, in addition to the grounds stated above for specific and general jurisdiction, a substantial portion of the tortious activity and civil conspiracy alleged herein against Defendants occurred in Miami-Dade County with the objective to harm investors of the Funds in Florida.   Defendants have also purposefully availed themselves of the privilege of doing business in Florida by, among other things, receiving funds directed by Dazzo, a Florida resident.

19.     Venue is proper in Miami-Dade County, Florida.  Certain of the causes of action herein accrued in Miami-Dade County, Florida insofar as the transfer of funds was made from Miami-Dade County, Florida.

20.     All conditions precedent to bringing this action have occurred or been excused, or the satisfaction of such conditions would be futile.

21.     Defendants have retained the undersigned counsel to prosecute this action and are obligated to pay reasonable attorneys' fees and costs in connection with this action.

**Background**

22.     In 2019, Feingold, a Florida licensed attorney, proposed a business structure to Cardinale through which investor funds would be raised to be deployed into alternative businesses and investments, including the hotel and real estate business sectors. Messrs. Dazzo and Feingold offered to capitalize on their business relationships and to handle the selection, management, reporting, cash flows, and bank arrangements for these investment opportunities.

23.     As a result of these offers, the Hotel Fund and the Special Opportunity Fund were formed.

**L3 Capital Hotel Fund, LLC Series A:  Asheville Hotel Project**

24.     In or about the Spring of 2019, Feingold and Dazzo identified a potential project for the construction of a Marriott TownePlace Suites located on the Northwest corner of the intersection of I-40 and Brevard Road (the "Asheville Hotel Project"), and more fully described as 140 South Bear Creek Road, in Asheville, Buncombe County, North Carolina (the "Asheville Hotel Project Site").

25.     In or about the Spring of 2019, Feingold drafted and circulated, among other things, summaries of the project, investment summaries detailing development of the Asheville Hotel Project by "SVN Principals" at "www.svnblackstream.com", income and expense information, a site plan, an appraisal, a market study prepared for "Blackstream Development, LLC," a draft franchise agreement listing "TBD (SVN Blackstream)" as the Franchisee, and a management agreement with "Ford Elliott" as the "Managing Member" of the "Owner".

26.     Feingold directly interfaced with Ford Elliott and Joshua Howard of Blackstream on the operations and projected cash needs of the Asheville Hotel Project.  Blackstream, through Maxine Turner, requested an equity investment into the Asheville Hotel Project.

27.     Feingold commented upon a draft Private Placement Memorandum ("PPM") Subscription Agreement, and Operating Agreement for a newly formed Delaware LLC, Asheville Investment I, LLC f/k/a TownePlace Asheville Investment I, LLC ("Asheville Investment"). The Asheville Investment Offering Memorandum, Subscription Agreement, and Operating Agreement are attached as Composite Exhibit 3.

28.     Consistent with the PPM, on or about May 21, 2019, Blackstream's Joshua Howard organized Bear Creek Holdings, a South Carolina limited liability company, as a special purpose vehicle for the Asheville Hotel Project.

29.     Thereafter, on or about June 4, 2019, BB-BCH and Asheville Investment entered into an Operating Agreement of Bear Creek Holdings whereby (1) BB-BCH was recognized as the 30% member and a Manager of Bear Creek Holdings; (2) Asheville Investment was recognized as the 70% member and a Manager of Bear Creek Holdings; and (3) Feingold was recognized as the "designee" of Asheville Investment. The Bear Creek Holding Operating Agreement is attached as Exhibit 4.

30.     In or about June 2019, including, but not limited to, June 20 and June 21, 2019, Feingold solicited to be granted a Power of Attorney executed by Asheville Investment for the Asheville Hotel Project ("Asheville POA"), for the ostensible purpose of "talk[ing]" to "Marriott" "in order to keep things moving along and not have to wait for everyone to sign off on matters that I am regularly handling for this project on a daily basis."   The POA authorized Feingold to "[e]xecute such documents and make such decisions for the development of the [Asheville Hotel] Project in dealing with any and all vendors, service providers, developers, contracts, architects, engineers, consultants or any other entities so involved in the development of the Project including but not limited to Marriott International, Ford Elliott, Josh Howard, Esq. and/or Bear Creek

Holdings, LLC or any affiliates or related entities of the same as may be involved in the Project." The Asheville POA is attached as <u>Exhibit 5</u>.

31.    In or about July 2019, Richard Cardinale, Ford Elliott, Josh Howard, Carlos Salgado, Steven Baldassara, Michael Dazzo executed guarantees pertaining to the forthcoming franchise agreement.

32.    In or about August 2019, Feingold continued to draft and/or participate in the drafting of the offering materials for the Asheville Hotel Project.

33.    On or about August 13, 2019, Asheville Investment wired transferred the sum of $1,797,291.00 from its Wells Fargo Business Checking Account No. ███████ to Ward and Smith PA, which handled the Closing on the purchase of the Asheville Hotel Project Site, at Ward and Smith, P.A.'s Bank Account at First Citizen's Bank Account No. ███████.

34.    On or about August 4, 2019, Bear Creek closed on the purchase of the Asheville Hotel Project Site from Avon Park Holdings, LLC, a Blackstream Development entity controlled by Ford Elliott and Carlos Salgado, for the sum of $1,790,000 together with settlement charges of $7,290.70, for a total of $1,797,291.00.

35.    BB-BCH, through Ford Elliott and Joshua Howard, personally executed a Closing Statement, acknowledging the source of funds from Asheville Investment, which counter-signed through Feingold.

36.    On or about August 29, 2019, Bear Creek Holdings signed its Franchise Agreement with Marriott, identifying Asheville Investment as the 70% member of Bear Creek and BB-BCH as the 30% member.

37.    In or about September -November 2019, Feingold continued to head up the day-to-day operations of the Asheville Hotel Project, interfacing directly with Ford Elliott and Joshua

Howard of Blackstream on the operations and projected cash needs of the Asheville Hotel Project, providing detailed requests to fulfill "estimated cash needs".

38. Between June 13, 2019 and January 15, 2020, consistent with Blackstream's requests for cash needs for the Asheville Hotel Project, Asheville Investment wire transferred to Bear Creek Holdings the sum of $307,869 in six installments from Asheville Investment's Wells Fargo Account ▇▇▇▇▇▇ to Bear Creek Holdings' Bank Account at Synovus.

39. Between November 14, 2019 and March 17, 2020, Asheville Investment direct transferred from its Wells Fargo Account ▇▇▇▇▇▇ the total sum of $1,273,009.00 on draw requests on the request of Blackstream and Bear Creek Holdings.

40. Because the Asheville Hotel Project was not immediately ready for construction, an investment portfolio for merchant cash advances was created at Samson Horus, LLC ("Samson") (hereinafter, the "Asheville Portfolio"). Feingold acted as the point of contact with Samson, directing funds into and out of the Asheville Portfolio.

41. Between August 23, 2019 and October 16, 2019, Asheville Investment wire transferred to the Asheville Portfolio at Samson Horus, LLC in six installments the sum of $3,900,000.00 from Asheville Investment's Wells Fargo Account ▇▇▇▇▇▇ to Samson Horus at the Victory State Bank Account.

42. Thereafter, Asheville Investment received at least $735,680 at its Wells Fargo Account No. ▇▇▇▇▇▇. However, a Feingold-owned entity, Davick Capital, received at its Account ▇▇▇▇▇▇ at least approximately $575,436.33 from the Asheville Portfolio account.

43. Consistent with Asheville Investment's status as a Member and Manager of Bear Creek Holdings:

      a. Ford Elliott of Blackstream periodically reported to Asheville Investment on the

progress of the Asheville Hotel Project;

b.  Blackstream issued a Funding Forecast in April 2020 reflecting the equity injections into Bear Creek Holdings and requesting further equity injections;

c.  In or about October 6, 2020, Maxine Turner, on behalf of Blackstream, issued or caused to be issued a Financial Statement Report for Bear Creek Holdings, reflecting that, as of September 2020, Asheville Investment had injected $5,747,527.00 of funding into Bear Creek Holdings, while BB-BCH had contributed zero dollars.

d.  Feingold, with the assistance of his son, Ryan Feingold, periodically prepared reports on the status of the Asheville Hotel Project.

e.  Feingold provided episodic, but ultimately incomplete, reporting on the status of the Asheville Hotel Project.

44.  Thereafter, on or about January 28, 2021, the Hotel Fund was formed as an investment vehicle to hold the Asheville Hotel Project and the Raleigh Hotel Project, as well as upcoming projects.

45.  In or about the Spring of 2021, including, but not limited to, January 24-29, 2021, Feingold participated in the drafting of the Hotel Fund PPM, the Hotel Fund Operating Agreement, the Hotel Fund Subscription Agreement, and/or other ancillary documents.

46.  As part of the transaction, Asheville Investment and Raleigh Investment (described below) became 100% wholly-owned subsidiaries of the Hotel Fund, and holders of investments in Asheville Investment and Raleigh Investment became Series A and Series B holders of membership interests in the Hotel Fund.  The Hotel Fund opened a bank account at Empire State Bank identifying Dazzo as its authorized signer.

**L3 Capital Hotel Fund, LLC Series B:  Raleigh Hotel Project**

47.     Between approximately November 2019 and January 2020, Feingold and Dazzo introduced an opportunity to acquire a property for a Marriott TownePlace Suites, at 1021 Carrington Mill Boulevard, Morrisville, North Carolina 27560 ("Raleigh Hotel Project"), through an SPV that, according to Feingold, was "owned and controlled by Ford Elliott" of Blackstream. Feingold directly interfaced with Ford Elliott and Joshua Howard of Blackstream on the operations and projected cash needs of the Asheville Hotel Project.  Blackstream, through Maxine Turner, requested an equity investment into the Raleigh Hotel Project.

48.     In or about January 2020, Feingold participated in the drafting of offering materials, including a PPM, Operating Agreement, and investment summary for an investment in Raleigh Investment I, LLC ("Raleigh Investment"), which was created to fund the Raleigh Hotel Project. The Raleigh Investment Offering Memorandum and Subscription Agreement is attached as Exhibit 6.

49.     Consistent with the PPM, on February 11, 2020, Blackstream's Joshua Howard organized Carrington Mill Holdings, a South Carolina limited liability company, as an SPV for the Raleigh Hotel Project.

50.     On February 7, 2020 and April 13, 2020, Raleigh Investment wired the total sum of $800,000 in increments of $750,000 and $50,000, respectively, to Blackstream at its Southern First Bank Account No. ███████████.

51.     Consistent with Raleigh Investment's status as a Member of Carrington Mill Holdings:

  a.  Blackstream issued a Funding Forecast in April 2020 reflecting the equity injections into Carrington Mill Holdings and requesting further equity injections;

b.  In or about October 2020, Blackstream issued, through Maxine Turner, a Financial Statement Report for Carrington Mill Holdings, reflecting that, as of September 2020, Raleigh Investment had injected $824,732 of funding into Carrington Mill Holdings, while BB-BCH had contributed zero dollars.

c.  In or about October 2020, Blackstream issued, through Maxine Turner, a Project Cost Report reflecting that Raleigh Investment was an equity holder in Carrington Mill Holdings.

d.  In or about October 2020, Blackstream issued, through Maxine Turner, a "Funding Forecast" that detailed the "Equity Funding" provided to date for Carrington Mill Holdings and requested further "Equity Funding".

e.  Feingold, with the assistance of his son, Ryan Feingold, periodically prepared reports on the status of the Raleigh Hotel Project.

f.  Feingold episodically updated Raleigh Investment on the Raleigh Hotel Project.

52.  Because the Raleigh Hotel Project had longer term funding needs, an investment portfolio for merchant cash advances was created at Samson (hereinafter, the "Raleigh Portfolio"). Dazzo executed the Master Participation Agreement with Samson on behalf of Raleigh Investment. Feingold acted as the point of contact with Samson, directing funds into and out of the Raleigh Portfolio. Raleigh Investment invested $4,568,000 into Samson's Raleigh Portfolio from February 7, 2020 to April 9, 2020.

53.  During Feingold's control of the Raleigh Portfolio, $2,141,397.02 was transmitted from the Raleigh Portfolio via ACH to a Bank Account ████████, another $343,690.63 was transmitted via ACH during the time period from October 30, 2020 to December 9, 2020 from the Raleigh Portfolio to Feingold's Davick Bank Account ████████, and another $1,590,682.24 was

15

transmitted during the time period from December 11, 2020 to January 20, 2022 from the Raleigh Portfolio to Feingold's Davick Bank Account ███████.

### L3 Capital Hotel Fund, LLC Series C:  North Myrtle Beach Hotel Project

54.      In or about late 2020 including, but not limited to, December 2020, Feingold and Dazzo identified an opportunity for the development of a Marriott Residence Inn branded hotel on property (the "North Myrtle Beach Hotel Project") situated at 1427 South Ocean Boulevard, North Myrtle Beach, Horry County, South Carolina (the "North Myrtle Beach Project Site").

55.      In or about December 2020, Feingold worked on financial projections for the North Myrtle Hotel Project.

56.      In or about January 2021, Feingold and Dazzo worked on a PowerPoint for the North Myrtle Beach Project.

57.      The PPM for the North Myrtle Beach Project stated that the "investment in the Property [North Myrtle Beach Project Site] will be made indirectly through the purchase of membership interests in an intermediate limited liability company that will in turn own the Property (the 'Portfolio Company')."

58.      Consistent with the PPM being drafted for the North Myrtle Beach Project, on or about January 5, 2021, Blackstream's Joshua Howard formed Crescent Beach Holdings, a South Carolina limited liability company, as a special purpose vehicle for the North Myrtle Beach Project.

59.      On or about January 29, 2021, the Hotel Fund issued the PPM for the North Myrtle Beach Project offering Series C Interests in the Hotel Fund as part of a Regulation D offering for sophisticated investors. The Series C Supplement to the Hotel Fund PPM is attached as Exhibit 7.

60.     Between September 13, 2021 and October 1, 2021, the Hotel Fund transferred to Blackstream the sum of $9,300,000 earmarked for the North Myrtle Beach Project and/or the Ormond Beach Hotel Project (as described below), from the Hotel Fund's Empire Bank Account ███████ to Blackstream's Bank Account ██████████.

61.     Dazzo individually authorized and signed off on each of the transfers from the Empire Bank Account of the Hotel Fund to Blackstream from the Hotel Fund earmarked for "REAL ESTATE DEAL".  In turn, bank employees at Empire Bank verified with Dazzo each transfer.

62.     Because the Projects were not immediately ready for development, a portfolio titled "L3 North Myrtle Beach" was created at Samson Horus, LLC ("Samson") (hereinafter, the "L3 North Myrtle Beach Portfolio").  The Hotel Fund transferred another $9,500,000 to the L3 North Myrtle Beach Portfolio so that the funds could appreciate while the development approvals proceeded forward on the North Myrtle Beach Project.

63.     Dazzo individually authorized and signed off on each of the transfers to Samson from the Hotel Fund earmarked for "Myrtle Beach Portfolio."  In turn, Empire Bank employees verified Dazzo's approval of the wire transfers from Empire Bank to Samson.

64.      During the time period that the Hotel Fund funded the Samson account, Feingold controlled the Myrtle Beach Portfolio.  Feingold individually gave instructions to Samson employee Danielle Medina on where to send funds from the North Myrtle Beach Portfolio.

65.     Between August 6, 2021 and November 26, 2021, Blackstream received and acknowledged wire transfers totaling $4,043,000 from the North Myrtle Beach Portfolio.

66.     Blackstream thus received and acknowledged wire transfers pertaining to the Myrtle and Ormond Beach projects totaling $13,343,000 in the period from August 6, 2021 through and including November 26, 2021.

67.     Three days after the last of such transfers, or on or about November 29, 2021, Blackstream used, controlled, and distributed a portion of the funds from to or on behalf of North Myrtle, which acquired the North Myrtle Beach Project Site for the sum of $7,000,000.

### L3 Hotel Fund, LLC Series D:  Ormond Beach Hotel Project

68.     In or about the Spring of 2021, Feingold and Dazzo identified an opportunity for the development of a Residence Inn by Marriott (the "Ormond Beach Hotel Project") on real property situated at 251 South Atlantic Avenue, Ormond Beach, Volusia County, Florida (the "Ormond Beach Project Site").

69.     In or about the Summer of 2021 including, but not limited to, August 2021, Feingold drafted a Pitch Book for the Ormond Beach Hotel Project, and participated in drafting a PPM and Subscription Agreement for the Ormond Beach Hotel Project.  The PPM detailed that the "investment in the Property will be made indirectly through the purchase of membership interests in an intermediate limited liability company that will in turn own the Property (the "Portfolio Company").

70.     Consistent with the PPM and offering documents that Feingold partially drafted, on or about June 29, 2021, Blackstream's Joshua Howard organized Ormond Beach Holdings as a South Carolina limited liability company.

71.     On or about August 23, 2021, the Hotel Fund issued the PPM for the Ormond Beach Hotel Opportunity offering Series D Interests in the Hotel Fund as part of a Regulation D Offering to accredited investors. The Series D Supplement to the Hotel Fund PPM is attached as Exhibit 8.

72.     On January 12, 2022, among other dates and times, Blackstream used, controlled and distributed the funds to or on behalf of Ormond Beach Holdings, which utilized the funds to acquire the Ormond Beach Project Site for $5.3 million. The Ormond Beach Holdings Business Entity Search is attached as Exhibit 9.

73.     Upon information and belief, Blackstream also used, controlled, and distributed the funds to or on behalf of Ormond Beach Holdings, on or about March 5, 2022, to acquire a parcel at 264 South Atlantic Avenue, adjacent to the Ormond Beach Project Site for parking and residential purposes, for the sum of $2,050,000.00.

## L3 Special Opportunity Fund, LLC

74.     In or about the Spring of 2021, Feingold and Dazzo identified an opportunity for a commercial real estate development consisting of undeveloped commercially zoned outparcels near the intersection of Hyatt Street and Nancy Creek Road in Gaffney, Cherokee County, South Carolina and identified more fully as Tax Map 062-00-00-029.004, .007, .009 & .010, and 044-00-00-030.000 ("Gaffney Outparcel I").  Gaffney Outparcel I was adjacent to a planned D.R. Horton residential housing project, Fox Creek, that, at the time, had yet to be announced.

75.     In or about February 2021, including, but not limited to, February 22 and 25, 2021, Feingold participated in the drafting of a Pitch Deck for the Gaffney Outparcel I, a PPM, and Operating Agreement for a new Delaware investment vehicle, the Special Opportunity Fund.

76.     On or about February 25, 2021, the Special Opportunity Fund issued the PPM for the Gaffney Outparcel I offering Series A Interests in the Special Opportunity Fund as part of a Regulation D Offering to sophisticated investors.   The Series A Supplement to the Special Opportunity Fund PPM is attached as Exhibit 10.

77.     Consistent with the PPM, on or about March 16, 2021, Blackstream's Joshua Howard formed Hyatt Street Holdings, a South Carolina limited liability company, as a special purpose vehicle for the Gaffney Outparcel I Project.

78.     In or about the Summer of 2021, Feingold and Dazzo identified another opportunity for the development of a real estate parcel located to the north of the intersection of Nancy Creek Road and Hyatt Street in Gaffney, South Carolina, consisting of an approximately 10 acre undeveloped commercial zoned and ready outparcel near the Gaffney Outlets in Gaffney, South Carolina and adjacent to the planned D.R. Horton housing development Fox Creek ("Gaffney Outparcel II") (all of the Hotel Projects and Gaffney Outparcel I and II are collectively, the "Projects").  In or about June 2021, including, but not limited to, June 9 and 11, 2021, Feingold drafted and/or participated in the drafting of, a Pitch Book for the Gaffney Outparcel II.

79.     On or about June 17, 2021, the Special Opportunity Fund issued a supplement for a Series B Interest in the Special Opportunity Fund for the Gaffney Outparcel II. The Series B Supplement to the Special Opportunity Fund PPM is attached as Exhibit 11.

80.     Between April 30, 2021 and December 1, 2021, the Special Opportunity Fund transferred the sum of $15,299,500.00 from its Empire Bank Account ▮▮▮▮▮ to Blackstream's Bank Account Number ▮▮▮▮▮.

81.     For each transfer made from the Special Opportunity Fund to Blackstream, Feingold either directed the transfer, supervised the transfer, or was aware of the transfer.  For each individual transfer made from the Special Opportunity Fund to Blackstream, Dazzo initiated and approved the transfer of funds from the Special Opportunity Fund and earmarked the funds on the Wire Transfer documentation as pertaining to the subject "Real Estate Deal."

82.     On or about November 30, 2021 and December 20, 2021, among other dates and times, Blackstream used, controlled and distributed the funds to Hyatt Street, which utilized the funds, to acquire, among other things, the real property comprising the Gaffney Outparcel I and Gaffney Outparcel II including, but not limited to, the following:

      a.  On or about December 20, 2021—after the Special Opportunity Fund had fully funded $15,299,500.00 to Blackstream—Hyatt Street acquired real property encompassing Gaffney Outparcel II and part of Gaffney Outparcel I for the sum of $4,854,550.83.

      b.  On or about December 20, 2021—after the Special Opportunity Fund had fully funded $15,299,500.00 to Blackstream—Hyatt Street acquired real property encompassing part of Gaffney Outparcel I for the sum of $114,387.14.

### Feingold and Dazzo Seize Control

83.     Unbeknownst to Cardinale, by no later than August 2021, Feingold and Dazzo began to hijack the projects on behalf of his new business, www.feingoldllc.com , and BroadStreet by soliciting individual investors who had invested in the Projects through Asheville Investment, Raleigh Investment, the Hotel Fund, and the Special Opportunity Fund.  On or about August 31, 2021, Feingold invited various personnel to a data room from BroadStreet containing information about the Projects in an apparent effort to dilute the prior investments and assume control over the Projects.  On or about September 2, 2021, Feingold and Dazzo invited prospective investors to a meeting in South Carolina concerning, among other things, investment into the Hotel Projects. On September 15, 2021, Joseph Baldassara on behalf of BroadStreet circulated a dataroom link containing further information about the Projects.

84.     In late 2021 and early 2022, Cardinale began asking for a timeline on repayment from the Projects.  Hotels that should have already opened had not even broken ground, and there was no development on Gaffney Outparcel I and Gaffney Outparcel II.  Shortly thereafter, on January 5, 2022 at 2:17 a.m., Feingold sent a lengthy, threatening communication to Cardinale stating, among other things: "You have benefitted immensely from my work and protection of you and you are going to pay me for that."  Feingold further stated: "I can assure you that I have no interest in ruining you but I can guarantee that I will if it is necessary." Exhibit 12.

85.     Almost immediately—and perhaps even before they severed their relationships with the Funds—Messrs. Dazzo and Feingold joined BroadStreet, Inc. and their related entities ("BroadStreet").  BroadStreet then began soliciting the Funds' investors to invest more money for the same projects as the Funds.  Feingold, Dazzo, and BroadStreet hijacked and converted the Funds' interests in their investments.  BroadStreet also purported to bring in new money from some of the same investors and others who are receiving preferential treatment as to information and returns.

86.     From early 2022 to the present, Feingold, Dazzo, Blackstream, and the other Defendants have ensured that the Funds have received no money or reporting from all but one of their investments.

87.     Blackstream, BB-BCH, Bear Creek Holdings, Feingold and Dazzo have failed and refused to account to Asheville Investment for Asheville Investment's equity funds transfers to Blackstream Development and Bear Creek.

88.     Blackstream, BB-BCH, Carrington Mill, Feingold and Dazzo have failed and refused to account to Raleigh Investment for Raleigh Investments' funds transfers to Blackstream Development and Carrington Mill.

89.     Blackstream, BB-BCH, Crescent Beach Holdings, Feingold and Dazzo have failed and refused to account to the Hotel Fund for the funds transfers made by the Hotel Fund on the North Myrtle Beach Project.

90.     Blackstream, BB-BCH, Ormond Beach Holdings, Feingold and Dazzo have failed and refused to account to the Hotel Fund for the funds transfers made by the Hotel Fund on the Ormond Beach Hotel Project.

91.     Blackstream, Hyatt Street Holdings, Feingold, and Dazzo have failed and refused to account to the Special Opportunity Fund for the funds transfers made by the Special Opportunity Fund.

92.     Upon information and belief, Contender is an affiliate of Blackstream.

93.     Contender identifies Ford Elliott as its CEO and Co-Chairman, and Joshua Howard as its President and Chief Legal Officer. The "Team" section of Contender's website is attached as Exhibit 13.

94.     Further, Contender's "Projects" include all four of the Hotel Fund hotels and the Fox Creek projected related to the Special Opportunity Fund outparcels. Upon information and belief, at least some or all of the assets set forth above were transferred to, and are currently held by, Contender. The "Projects" Section of Contender's website is attached as Exhibit 14.

**Count I**
**Specific Performance and Equitable Relief Arising From Violation of Operating Agreement for Bear Creek Holdings and South Carolina Limited Liability Company Act**
**(Plaintiff Hotel Fund Against Defendant BB-BCH and Bear Creek Holdings)**
**(Asheville Hotel Project)**

95.     Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

96.     Defendant BB-BCH entered into a legally enforceable Operating Agreement with Asheville Investment.  The Operating Agreement was clear, definite, and certain with respect to the actions to be taken by BB-BCH.

97.     Asheville Investment performed all acts required to be performed of it pursuant to the Operating Agreement.

98.     Defendant BB-BCH failed to perform its duties pursuant to the Operating Agreement including, but not limited to:

a.     Failing to "keep or cause to be kept true and full books and records showing all receipts and expenditures, assets and liabilities, income and losses and all other records necessary for recording the Company's allocations provided for in Article IV [of the Operating Agreement] and all other records required by the [South Carolina] LLC Act" and to "maintain such books and records at all times at the principal office of the Company in South Carolina, where they shall be available during regular business hours and upon reasonable prior notice for inspection, examination, and copying by all Members or by their duly authorized representatives" (§11.1); and

b.     Failing to grant "online access to all books and records of the Company" and providing "usernames and passwords to all accounting software, operational software and banking accounts" (§ 11.1).

c.     Failing to deliver within "ninety (90) days after the expiration of each Fiscal Year of [Bear Creek Holdings], audited financial statements showing the taxable income and expenses of [Bear Creek Holdings], the balance assets thereof, related statements of income and Members' capital and cash distributions, a statement of

each Member's share of the Company's taxable income or loss, and all other information necessary for the preparation by each Member of his or its federal income tax as to the Company's income, gain, losses, deductions and credits and the allocations thereof to each Member, including Form K-1" (§ 11.2(a));

d.      Failing to deliver "within thirty (30) days after the end of each semi-annual period, the unaudited financial statements of [Bear Creek Holdings], including a balance sheet as of the end of the quarter and statements of income and cash flows for such semi-annual period" (§ 11.2(B));

e.      Failing to deliver "[a]ll periodic reports returns or statements required to be distributed to the Members [of Bear Creek Holdings] by any federal, state, or local governmental agency having jurisdiction over [Bear Creek Holdings]" (§ 11.2(C));

f.      As provided in Section 11.1 of the Operating Agreement, failing to cause to be kept and provided "all other records required by the [South Carolina] LLC Act" including (i) failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" (S.C. Code § 33-44-408(a)); (ii) failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" (S.C. Code § 33-44-408(b)(1)); and (iii) failing to provide "on demand, other information concerning the company's business or affairs."  S.C. Code § 33-44-408(b)(2).

99.     Bear Creek Holdings failed to perform its duties pursuant to Chapter 44, South Carolina Uniform Limited Liability Company Act of 1996, S.C. Code § 33-44-101 *et seq.* including, but not limited to:

     a.   failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" S.C. Code § 33-44-408(a);

     b.   failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" S.C. Code § 33-44-408(b)(1); and

     c.   failing to provide "on demand, other information concerning the company's business or affairs." S.C. Code § 33-44-408(b)(2).

100.     Pursuant to S.C. Code Section 33-44-410 and the Operating Agreement, Plaintiff Hotel Fund is entitled to specific performance and equitable relief against Defendant BB-BCH to enforce its "rights under the operating agreement" and its "rights under [Chapter 44, South Carolina Uniform Limited Liability Company Act of 1996, S.C. Code § 33-44-101 *et seq.* (the "LLC Act"). S.C. Code § 33-44-410(a)(1)-(3). Plaintiff Hotel Fund is entitled to specific performance and equitable relief against Bear Creek Holdings to enforce its "rights under [the LLC Act]." S.C. Code § 33-44-410(a)(2)-(3).

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND, LLC, demands judgment in its favor and against Defendants BB-BCH, LLC and BEAR CREEK HOLDINGS, LLC for (i) specific performance of the aforementioned obligations under the Operating Agreement; (ii) specific performance and equitable relief pursuant to the LLC Act; (iii) an equitable accounting of

all operations of BEAR CREEK HOLDINGS, LLC and transactions with BB-BCH, LLC and other entities; and (4) such other equitable relief as the Court determines to be appropriate in the circumstances.

**Count II**
**Injunctive and Equitable Relief Arising From Violation of Operating Agreement for Bear Creek Holdings and South Carolina Limited Liability Company Act**
**(Plaintiff Hotel Fund Against Defendant BB-BCH and Bear Creek Holdings)**

101. Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

102. Plaintiff Hotel Fund has a substantial likelihood of success on the merits of its claim. Defendant BB-BCH entered into a legally enforceable Operating Agreement with Asheville Investment. The Operating Agreement was clear, definite, and certain with respect to the actions to be taken by BB-BCH.

103. Asheville Investment performed all acts required to be performed of it pursuant to the Operating Agreement.

104. Defendant BB-BCH failed to perform its duties pursuant to the Operating Agreement including, but not limited to:

    a. Failing to "keep or cause to be kept true and full books and records showing all receipts and expenditures, assets and liabilities, income and losses and all other records necessary for recording the Company's allocations provided for in Article IV [of the Operating Agreement] and all other records required by the [South Carolina] LLC Act" and to "maintain such books and records at all times at the principal office of the Company in South Carolina, where they shall be available during regular business hours and upon reasonable prior notice for inspection,

examination, and copying by all Members or by their duly authorized representatives" (§11.1); and

b.      Failing to grant "online access to all books and records of the Company" and providing "usernames and passwords to all accounting software, operational software and banking accounts" (§ 11.1).

c.      Failing to deliver within "ninety (90) days after the expiration of each Fiscal Year of [Bear Creek Holdings], audited financial statements showing the taxable income and expenses of [Bear Creek Holdings], the balance assets thereof, related statements of income and Members' capital and cash distributions, a statement of each Member's share of the Company's taxable income or loss, and all other information necessary for the preparation by each Member of his or its federal income tax as to the Company's income, gain, losses, deductions and credits and the allocations thereof to each Member, including Form K-1" (§ 11.2(a));

d.      Failing to deliver "within thirty (30) days after the end of each semi-annual period, the unaudited financial statements of [Bear Creek Holdings], including a balance sheet as of the end of the quarter and statements of income and cash flows for such semi-annual period" (§ 11.2(B));

e.      Failing to deliver "[a]ll periodic reports returns or statements required to be distributed to the Members [of Bear Creek Holdings] by any federal, state, or local governmental agency having jurisdiction over [Bear Creek Holdings]" (§ 11.2(C));

f.      As provided in Section 11.1 of the Operating Agreement, failing to cause to be kept and provided "all other records required by the [South Carolina] LLC Act" including (i) failing to provide "members and their agents and attorneys access to

28

its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" (S.C. Code § 33-44-408(a)); (ii) failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" (S.C. Code § 33-44-408(b)(1)); and (iii) failing to provide "on demand, other information concerning the company's business or affairs."  S.C. Code § 33-44-408(b)(2).

105.    Bear Creek Holdings failed to perform its duties pursuant to Chapter 44, South Carolina Uniform Limited Liability Company Act of 1996, S.C. Code § 33-44-101 *et seq.* including, but not limited to:

    a.    failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" S.C. Code § 33-44-408(a);

    b.    failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" S.C. Code § 33-44-408(b)(1); and

    c.    failing to provide "on demand, other information concerning the company's business or affairs."  S.C. Code § 33-44-408(b)(2).

106.    Pursuant to S.C. Code Section 33-44-410 and the Operating Agreement, Plaintiff Hotel Fund is entitled to injunctive relief against Defendant BB-BCH to enforce its "rights under the operating agreement" and its "rights under [Chapter 44, South Carolina Uniform Limited

Liability Company Act of 1996, S.C. Code § 33-44-101 *et seq.* (the "LLC Act").  S.C. Code § 33-44-410(a)(1)-(3).  Plaintiff Hotel Fund is entitled to injunctive and other equitable relief against Bear Creek Holdings to enforce its "rights under [the LLC Act]."  S.C. Code § 33-44-410(a)(2)-(3).

107.    Plaintiff Hotel Fund lacks an adequate remedy at law to address the informational deprivation alleged herein.  Plaintiff Hotel Fund has suffered, and will continue to suffer, an imminent irreparable harm from the information deprivation alleged herein.  The public interest factors favor the entry of injunctive relief because the interests of investors are inextricably tied up with the monies invested into the Asheville Hotel Project.  Moreover, Plaintiff Hotel Fund has suffered an injury, distinct and separate from other members of Bear Creek Holdings because the other member of Bear Creek Holdings is the party responsible for the informational deprivation.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND, LLC, demands judgment in its favor and against Defendants BB-BCH, LLC and BEAR CREEK HOLDINGS, LLC for injunctive relief pertaining to the aforementioned obligations under the Operating Agreement and the LLC Act, and such other equitable relief as the Court determines to be appropriate in the circumstances.

**Count III**
**Specific Performance, Injunctive Relief, and Equitable Relief Arising From Violation of South Carolina Limited Liability Company Act**
**(Plaintiff Hotel Fund Against Defendant BB-BCH and Carrington Mill Holdings)**
**(Raleigh Hotel Project)**

108.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

109.    Raleigh Investment has a substantial likelihood of success on the merits.  Raleigh Investment is a member of Carrington Mill Holdings.  BB-BCH is a member and Manager of Carrington Mill Holdings.

110.     Raleigh Investment performed all acts required to be performed of it as a member of Carrington Mill Holdings.

111.     Carrington Mill Holdings failed to perform its duties, and BB-BCH failed to perform its duties as Manager, pursuant to the LLC Act, including, but not limited to:

    a.   failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" S.C. Code § 33-44-408(a);

    b.   failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" S.C. Code § 33-44-408(b)(1); and

    c.   failing to provide "on demand, other information concerning the company's business or affairs."  S.C. Code § 33-44-408(b)(2).

112.     Pursuant to S.C. Code Section 33-44-410, Plaintiff Hotel Fund is entitled to specific performance, an equitable accounting, and temporary and permanent injunctive relief against Defendant BB-BCH and Carrington Mill Holdings to enforce Plaintiff Hotel Fund's "rights under the LLC Act."  S.C. Code § 33-44-410(a)(2)-(3).

113.     Plaintiff Hotel Fund lacks an adequate remedy at law to address the informational deprivation alleged herein. Plaintiff Hotel Fund has suffered, and will continue to suffer, an imminent irreparable harm from the information deprivation alleged herein.  The public interest factors favor the entry of injunctive relief because the interests of investors are inextricably tied up with the monies invested into the Raleigh Hotel Project.  Moreover, Plaintiff Hotel Fund has suffered an injury, distinct and separate from other members of Carrington Mill Holdings because

the other member of Carrington Mill Holdings is the party responsible for the informational deprivation.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND, LLC, demands judgment in its favor and against Defendants BB-BCH, LLC and CARRINGTON MILL HOLDINGS, LLC for (i) specific performance of their obligations to account to Raleigh Investment pursuant to the LLC Act; (ii) equitable relief, including an equitable accounting, for Defendants' failure to perform their obligations pursuant to the LLC Act; (iii) temporary and permanent injunctive relief for Defendants' failure to perform their obligations pursuant to the LLC Act, and (iv) such other equitable relief as the Court determines to be appropriate in the circumstances.

**Count IV**
**Specific Performance, Injunctive Relief, and Equitable Relief Arising From Violation of South Carolina Limited Liability Company Act**
**(Plaintiff Hotel Fund Against Defendant BB-BCH and Crescent Beach Holdings)**
**(North Myrtle Beach Hotel Project)**

114.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

115.    Plaintiff Hotel Fund has a substantial likelihood of success on the merits.  Plaintiff Hotel Fund is a member of Crescent Beach Holdings.  BB-BCH is a member and Manager of Crescent Beach Holdings.

116.    Plaintiff Hotel Fund performed all acts required to be performed of it as a member of Crescent Beach Holdings.

117.    Crescent Beach Holdings failed to perform its duties, and BB-BCH failed to perform its duties as Manager, pursuant to the LLC Act, including, but not limited to:

a.    failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the

operating agreement" S.C. Code § 33-44-408(a);

b. failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" S.C. Code § 33-44-408(b)(1); and

c. failing to provide "on demand, other information concerning the company's business or affairs." S.C. Code § 33-44-408(b)(2).

118.   Pursuant to S.C. Code Section 33-44-410, Plaintiff is entitled to specific performance, an equitable accounting, and temporary and permanent injunctive relief against Defendant BB-BCH and Crescent Beach Holdings to enforce Plaintiffs' "rights under the "LLC Act.  S.C. Code § 33-44-410(a)(2)-(3).

119.   Plaintiff lacks an adequate remedy at law to address the informational deprivation alleged herein.  Plaintiff has suffered, and will continue to suffer, an imminent irreparable harm from the information deprivation alleged herein.  The public interest factors favor the entry of injunctive relief because the interests of investors are inextricably tied up with the monies invested into the North Myrtle Beach Hotel Project.  Moreover, Plaintiff has suffered an injury, distinct and separate from other members of Crescent Beach Holdings because the other member of Crescent Beach Holdings is the party responsible for the informational deprivation.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND, LLC, demands judgment in its favor and against Defendants BB-BCH, LLC and CRESCENT BEACH HOLDINGS, LLC for (i) specific performance of their obligations to account to the Hotel Fund pursuant to the LLC Act; (ii) equitable relief, including an equitable accounting, for Defendants' failure to perform their obligations pursuant to the LLC Act; (iii) temporary and permanent injunctive relief for

Defendants' failure to perform their obligations pursuant to the LLC Act, and (iv) such other equitable relief as the Court determines to be appropriate in the circumstances.

**Count V**
**Specific Performance, Injunctive Relief, and Equitable Relief Arising From Violation of South Carolina Limited Liability Company Act**
**(Plaintiff Hotel Fund Against Defendant BB-BCH and Ormond Beach Holdings)**
**(Ormond Hotel Project)**

120.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

121.    Plaintiff Hotel Fund has a substantial likelihood of success on the merits.  Plaintiff Hotel Fund is a member of Ormond Beach Holdings.  BB-BCH is a member and Manager of Ormond Beach Holdings.

122.    Plaintiff Hotel Fund performed all acts required to be performed of it as a member of Ormond Beach Holdings.

123.    Ormond Beach Holdings failed to perform its duties, and BB-BCH failed to perform its duties as Manager, pursuant to the LLC Act, including, but not limited to:

    a.  failing to provide "members and their agents and attorneys access to its records, if any, at the company's principal office or other reasonable locations specified in the operating agreement" S.C. Code § 33-44-408(a);

    b.  failing to provide "without demand, information concerning the company's business or affairs reasonably required for the proper exercise of the member's rights and performance of the member's duties under the operating agreement or this chapter" S.C. Code § 33-44-408(b)(1); and

    c.  failing to provide "on demand, other information concerning the company's business or affairs."  S.C. Code § 33-44-408(b)(2).

124.    Pursuant to S.C. Code Section 33-44-410, Plaintiff is entitled to specific performance, an equitable accounting, and temporary and permanent injunctive relief against Defendant BB-BCH and Ormond Beach Holdings to enforce Plaintiffs' "rights under the "LLC Act. S.C. Code § 33-44-410(a)(2)-(3).

125.    Plaintiff lacks an adequate remedy at law to address the informational deprivation alleged herein. Plaintiff has suffered, and will continue to suffer, an imminent irreparable harm from the information deprivation alleged herein. The public interest factors favor the entry of injunctive relief because the interests of investors are inextricably tied up with the monies invested into the Ormond Beach Hotel Project. Moreover, Plaintiff has suffered an injury, distinct and separate from other members of Ormond Beach Holdings because the other member of Ormond Beach Holdings is the party responsible for the informational deprivation.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND, LLC, demands judgment in its favor and against Defendants BB-BCH, LLC and ORMOND BEACH HOLDINGS, LLC for (i) specific performance of their obligations to account to the Hotel Fund pursuant to the LLC Act; (ii) equitable relief, including an equitable accounting, for Defendants' failure to perform their obligations pursuant to the LLC Act; (iii) temporary and permanent injunctive relief for Defendants' failure to perform their obligations pursuant to the LLC Act, and (iv) such other equitable relief as the Court determines to be appropriate in the circumstances.

**COUNT VI**
**<u>Unjust Enrichment</u>**
**<u>(Plaintiff Hotel Fund Against Defendants Blackstream, Contender, and Crescent Beach Holdings)</u>**
**<u>(North Myrtle Beach Hotel Project)</u>**

126.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

127.    Plaintiff Hotel Fund directly conferred a legally cognizable benefit upon Blackstream and Crescent Beach Holdings by transferring monies to Blackstream and Crescent Beach Holdings.

128.    Defendants Blackstream and Crescent Beach Holdings had knowledge of and appreciated the benefit so conferred.

129.    Defendants Blackstream and Crescent Beach Holdings have accepted and retained the benefit so conferred.

130.    The equitable circumstances are such that it would be unjust for Blackstream, Contender, and Crescent Beach Holdings to retain the benefits so conferred without paying the value thereof.

131.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and CRESCENT BEACH HOLDINGS, LLC for (i) equitable relief in the form of restitution for the benefit so conferred, or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT VII**
**Money Had and Received**
**(Plaintiff Hotel Fund Against Defendants Blackstream, Contender, and Crescent Beach Holdings)**
**(North Myrtle Beach Hotel Project)**

132.    Plaintiff SOF realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

133.    Plaintiff Hotel Fund directly conferred a benefit upon Blackstream and Crescent Beach Holdings by directly transferring monies upon Blackstream and Crescent Beach Holdings for a special purpose known by Blackstream and Crescent Beach Holdings, and the money has not been applied to that purpose.

134.    Defendants Blackstream and Crescent Beach Holdings had knowledge of the benefit so conferred.

135.    Defendants Blackstream and Crescent Beach Holdings have realized and appreciated the benefit so conferred by Plaintiff Hotel Fund.

136.    Defendants Blackstream and Crescent Beach Holdings are retaining the monies under conditions that make it unjust for them to retain it without paying its value.

137.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and CRESCENT BEACH HOLDINGS, LLC, for (i) equitable relief for the value of the monies retained by them and the proceeds thereof or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) and such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT VIII**
**Breach of Fiduciary Duty As Common Law Bailee**
**(Plaintiff Hotel Fund Against Defendant Blackstream)**
**(North Myrtle Beach Project)**

138.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

139.    Plaintiff Hotel Fund directly delivered personal property consisting of equity

funding ("North Myrtle Beach Hotel Funds") to Blackstream for allocation and distribution to the special purpose vehicle Crescent Beach Holdings for purchase and infrastructure development, for the benefit of and with the expectation and express understanding that it be used for the benefit of Plaintiff Hotel Fund and according to its directions.  Defendant Blackstream acknowledged the bailment by knowingly receiving the North Myrtle Beach Hotel Funds and distributing them to Crescent Beach Holdings.  In return, Defendant Blackstream benefitted from the receipt and distribution of funds through its receipt of tangible and intangible benefits.

140.    As a bailee, Defendant Blackstream owed a common law duty of care to use an ordinary degree of care or the degree of care which would be exercised by a person of ordinary care and prudence in protection of his own property, and to preserve, restore, and account for its use of the North Myrtle Beach Hotel Funds.

141.    Defendant Blackstream breached its fiduciary duty of care by, among other things:

    a.    failing to use ordinary care in receiving, distributing the North Myrtle Beach Hotel Funds; and

    b.    failing to account to the Hotel Fund as bailor for its use of the North Myrtle Beach Hotel Funds.

142.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender. To the extent Contender has received such interests, it holds—and breached—those same duties.

143.    As a direct and proximate cause of the foregoing, Plaintiff Hotel Fund has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendant BLACKSTREAM DEVELOPMENT, LLC and CONTENDER

DEVELOPMENT, LLC an amount sufficient to compensate Plaintiff for the damages caused by Defendant's misconduct, including but not limited to lost income, lost profits, attorneys' fees to address Defendant's wrongful acts, pre-judgment interest and such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT IX**
**Unjust Enrichment**
**(Plaintiff Hotel Fund Against Defendants Blackstream, Contender, and Ormond Beach Holdings)**
**(Ormond Beach Hotel Project)**

144.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

145.    Plaintiff Hotel Fund directly conferred a legally cognizable benefit upon Blackstream and Ormond Beach Holdings by transferring monies to Blackstream and Ormond Beach Holdings.

146.    Defendants Blackstream and Ormond Beach Holdings had knowledge of and appreciated the benefit so conferred.

147.    Defendants Blackstream and Ormond Beach Holdings have accepted and retained the benefit so conferred.

148.    The equitable circumstances are such that it would be unjust for Blackstream and Ormond Beach Holdings to retain the benefits so conferred without paying the value thereof.

149.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and ORMOND BEACH HOLDINGS, LLC for (i) equitable relief in the

form of restitution for the benefit so conferred, or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT X**
**Money Had and Received**
**(Plaintiff Hotel Fund Against Defendants Blackstream, Contender, and Ormond Beach Holdings)**
**(Ormond Beach Hotel Project)**

150.     Plaintiff SOF realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

151.     Plaintiff Hotel Fund directly conferred a benefit upon Blackstream and Ormond Beach Holdings by directly transferring monies upon Blackstream and Hyatt Street for a special purpose known by Blackstream and Ormond Beach Holdings, and the money has not been applied to that purpose.

152.     Defendants Blackstream and Ormond Beach Holdings had knowledge of the benefit so conferred.

153.     Defendants Blackstream and Ormond Beach Holdings have realized the benefit so conferred by Plaintiff Hotel Fund.

154.     Defendants Blackstream and Ormond Beach Holdings are retaining the monies under conditions that make it unjust for them to retain it without paying its value.

155.     Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and ORMOND BEACH HOLDINGS, LLC, for (i) equitable relief for

the value of the monies retained by them and the proceeds thereof or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) and such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT XI**
**Breach of Fiduciary Duty As Common Law Bailee**
**(Plaintiff Hotel Fund Against Defendant Blackstream, Ormond Beach Holdings, and Contender)**
**(Ormond Beach Hotel Project)**

156.    Plaintiff Hotel Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

157.    Plaintiff Hotel Fund directly delivered personal property consisting of equity investments (the "Ormond Beach Hotel Funds") to Blackstream for allocation and distribution to the special purpose vehicle Ormond Beach Holdings for purchase and infrastructure, for the benefit of and with the expectation and express understanding that it be used for the benefit of Plaintiff Hotel Fund and according to its directions.  Defendant Blackstream acknowledged the bailment by knowingly receiving the Ormond Beach Hotel Funds and distributing them to Ormond Beach Holdings.  In return, Defendant Blackstream benefitted from the receipt and distribution of funds through its receipt of tangible and intangible benefits.

158.    As a bailee, Defendant Blackstream owed a common law duty of care to use an ordinary degree of care or the degree of care which would be exercised by a person of ordinary care and prudence in protection of his own property, and to preserve, restore, and account for its use of the Ormond Beach Hotel Funds.

159.    Defendant Blackstream breached its fiduciary duty of care by, among other things,

a. failing to use ordinary care in receiving, distributing the Ormond Beach Hotel Funds; and

     b.   failing to account to the Hotel Fund as bailor for its use of the Ormond Beach Hotel

Funds.

160.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender. To the extent Contender has received such interests, it holds—and breached—those same duties.

161.    As a direct and proximate cause of the foregoing, Plaintiff Hotel Fund has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff L3 CAPITAL HOTEL FUND LLC, demands judgment in its favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and ORMOND BEACH HOLDINGS, LLC, jointly and severally, in an amount sufficient to compensate Plaintiff for the damages caused by Defendant's misconduct, including but not limited to lost income, lost profits, attorneys' fees to address Defendant's wrongful acts,  pre-judgment interest and such other and further relief as the Court determines to be appropriate in the circumstances.

### COUNT XII
### Unjust Enrichment
### (Plaintiff SOF Against Defendants Blackstream, Contender, and Hyatt Street)
### (Gaffney Outparcel I and II Projects)

162.    Plaintiff Special Opportunity Fund realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

163.    Plaintiff Special Opportunity Fund directly conferred a legally cognizable benefit upon Blackstream and Hyatt Street by transferring $15,299,500.00 to Blackstream/Hyatt Street for use in the Gaffney Outparcel I and Gaffney Outparcel II Projects.

164.    Defendants Blackstream and Hyatt Street had knowledge of and appreciated the benefit so conferred.

165.     Defendants Blackstream and Hyatt Street have accepted and retained the benefit so conferred.

166.     The circumstances are such that it would be unjust for Blackstream and Hyatt Street to retain the benefits so conferred without paying the value thereof.

167.     Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL SPECIAL OPPORTUNITY FUND LLC, demands judgment in their favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and HYATT STREET HOLDINGS for (i) equitable relief in the form of restitution for the benefit so conferred, or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT XIII**
**Money Had and Received**
**(Plaintiff SOF Against Defendants Blackstream, Contender, and Hyatt Street)**
**(Gaffney Outparcel I and II Projects)**

168.     Plaintiff SOF realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

169.     Plaintiff SOF directly conferred a benefit upon Blackstream and Hyatt Street by directly transferring $15,299,500.00 upon Blackstream and Hyatt Street for a special purpose known by Blackstream and Hyatt Street, and the money has not been applied to that purpose.

170.     Defendants Blackstream and Hyatt Street had knowledge of the benefit so conferred.

171.     Defendants Blackstream and Hyatt Street have realized the benefit so conferred by Plaintiff SOF.

172.    Defendants Blackstream and Hyatt Street are retaining the monies under conditions that make it unjust for them to retain it without paying its value.

173.    Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender.

**WHEREFORE**, Plaintiff L3 CAPITAL SPECIAL OPPORTUNITY FUND LLC, demands judgment in their favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and HYATT STREET HOLDINGS, LLC for (i) equitable relief for the value of the monies retained by them and the proceeds thereof or such other amount as equitably determined by the Court in accordance with applicable law; and (ii) and such other and further relief as the Court determines to be appropriate in the circumstances.

**COUNT XIV**
**Breach of Fiduciary Duty As Common Law Bailee**
**(Plaintiff SOF Against Defendant Blackstream, Hyatt Street, and Contender)**
**(Gaffney Outparcel I and II Projects)**

174.    Plaintiff SOF realleges and reasserts Paragraphs 1-94 above as though set forth fully herein.

175.    Plaintiff SOF directly delivered personal property consisting of $15,299,500.00 (the "SOF Funds") to Blackstream for allocation and distribution to the special purpose vehicle Hyatt Street for purchase and infrastructure for the benefit of and with the expectation and express understanding that it be used for the benefit of Plaintiff SOF and according to its directions. Defendant Blackstream acknowledged the bailment by knowingly receiving the SOF Funds and distributing them to Hyatt Street.  In return, Defendant Blackstream benefitted from the receipt and distribution of funds through its receipt of tangible and intangible benefits.

176.    As a bailee, Defendant Blackstream owed a common law duty of care to use an ordinary degree of care or the degree of care which would be exercised by a person of ordinary

care and prudence in protection of his own property, and to preserve, restore, and account for its use of the SOF Funds.

177.  Defendant Blackstream breached its fiduciary duty of care by, among other things,

a.  failing to use ordinary care in receiving, distributing the SOF Funds; and

b.  failing to account to SOF as bailor for its use of the SOF.

178.  Upon information and belief, at least some of the relevant financial and control interests related to the above facts were transferred to, and are currently held by, Contender. To the extent Contender has received such interests, it holds—and breached—those same duties.

179.  As a direct and proximate cause of the foregoing, Plaintiff SOF has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiff L3 CAPITAL SPECIAL OPPORTUNITY FUND LLC, demands judgment in their favor and against Defendants BLACKSTREAM DEVELOPMENT, LLC, CONTENDER DEVELOPMENT, LLC, and HYATT STREET HOLDINGS, LLC, jointly and severally, in an amount sufficient to compensate Plaintiff for the damages caused by Defendants' misconduct, including but not limited to lost income, lost profits, attorneys' fees to address their wrongful acts,  pre-judgment interest and such other and further relief as the Court determines to be appropriate in the circumstances.

## JURY TRIAL DEMAND

180.  Plaintiffs demand trial by jury.

Date: February 24, 2025

Respectfully Submitted,

*Counsel for Plaintiffs*

**GREENBERG TRAURIG, P.A.**
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
T. (954) 765-0500

*/s/ Avi Benayoun*
**AVI BENAYOUN**
Fla. Bar No. 0151696
benayouna@gtlaw.com
rita.curran@gtlaw.com
**JOHN L. MCMANUS**
Fla. Bar No. 0119423
mcmanusj@gtlaw.com
yeargina@gtlaw.com
**ZACHARY R. NEEDELL**
Fla. Bar No. 1011742
zachary.needell@gtlaw.com
jennifer.shiner@gtlaw.com
flservice@gtlaw.com

**GREENBERG TRAURIG LLP**
One Vanderbilt Avenue
New York, New York 10017
445 Hamilton Avenue, 9th Floor
White Plains, New York 10601
T. (212) 801-9200
**GEORGE D. SULLIVAN**
Fla. Bar No. 455520
sullivang@gtlaw.com

**SPERLING KENNY NACHWALTER**
1441 Brickell Avenue, Suite 1100
Miami, Florida 33131
T. (305) 381-7477

*/s/ Deborah Sampieri Corbishley*
**DEBORAH SAMPIERI CORBISHLEY**
Fla. Bar No. 588229
dsc@sperlingkenny.com